ALEXANDER M. JENKINS, appellant, *v.* DANIEL H. BRUSH,
appellee.

### *Appeal from Jackson.*

Upon a plea of payment in an action of *assumpsit,* the jury returned a verdict
    for the defendant, there being mutual accounts between the parties.   The
    plaintiff moved for a new trial, which motion was overruled, and was assigned
    for error:   *Held,* on a review of the whole evidence, that the same was com-
    petent, and in itself sufficient to establish the fact of payment, and being un-
    contradicted, the motion for a new trial was properly overruled.

It is the privilege of a jury to take into consideration all the circumstances dis-
    closed in the trial of a cause, many of which rarely find their way into the
    record as presented in an appellate Court.

ASSUMPSIT in the Jackson Circuit Court, brought by the
appellant against the appellee, and heard before the Hon.
Walter B. Scates and a jury, at the April term 1845.    Ver-
dict for the defendant for $325·60.    The plaintiff moved for
a new trial, whereupon the defendant entered a *remittitur* of
the sum of $246·35.    The Court overruled the motion for a

Jenkins *v.* Brush.

new trial, and rendered a judgment in favor of the defendant for $79·25.

*L. Trumbull,* and *J. Lamborn,* for the appellant.

*D. J. Baker,* for the appellee.

The Opinion of the Court was delivered by

KOERNER, J.* Alexander M. Jenkins declared against Daniel H. Brush, in the Jackson Circuit Court, at the May term 1844, in *assumpsit,* the declaration containing the common money counts and two special counts, the first of which alleges that, on the 3d day of May, 1839, the parties made an agreement in writing, by which the defendant undertook to collect for the plaintiff a considerable amount of notes, accounts, and judgments, in consideration of retaining one half of the amount collected, as a compensation, and to use all due and proper diligence to collect the same. It further alleges that said defendant had not used such diligence, whereby the plaintiff had lost the benefit of said notes, &c. &c., and that they had become, and were entirely lost to him. The second special count avers that defendant, in consideration of receiving one half of the sums of money to be collected by him, had promised to collect the amount of $2,052·97, and that he had actually collected $2,000·00 thereof, and had refused to pay the one half of said last mentioned sum to said plaintiff.

The defendant pleaded the general issue, payment, statute of limitations, set-off, and a special plea, that he, defendant, had used due diligence, filing an account with his plea of set-off. Issues of fact were joined, and at the April term 1845, the case was submitted to a jury, who found a verdict for defendant for $335·60. A new trial was moved for by plaintiff, for the reason that the verdict was against the evidence, whereupon the defendant remitted $246·35. The motion was overruled, and judgment rendered for $79·50.

---

*WILSON, C. J. and BROWNE, J. did not sit in this case.

The decision of the Court below in overruling this motion for a new trial is the only error assigned.

The bill of exceptions, purporting to contain all the evidence in the case, discloses the following state of facts:

The plaintiff produced on the trial, a list of notes, accounts and judgments, in his favor, to which is subjoined the following agreement:

"*Brownsville*, May 3, 1839.

Be it remembered that on this day, a full and complete settlement has been made between A. M. Jenkins and Daniel H. Brush, of all matters heretofore unsettled between them, except as it relates to the above and foregoing list of notes and accounts, judgments and so on, in favor of, and due A. M. Jenkins, which are given to said Brush to collect; which said Brush agrees he will do, if he can, and when the whole or any part of them are collected, pay one half of the amount so collected, to said Jenkins, the other half he is to have as compensation for his trouble of collecting.

(Signed)            A. M. Jenkins,
                    D. H. Brush."

The plaintiff then produced several witnesses, and a justice's docket, by which he established that at various times, commencing in the year 1839, the defendant had collected about $400·00. It appeared in the course of plaintiff's examination that a good many of the debts included in the list, were not collectable, and also that plaintiff Jenkins had, to a considerable extent, controlled many of the claims by giving direction to officers, and by making his own arrangements and settlements with the debtors. The amount so controlled, settled or received by Jenkins, amounts to something like $300·00.

The defendant, on his part, produced a note due him by plaintiff, amounting, with the interest, to about $45·00; also a certain paper, of which the following is a copy:

"A list of notes selected by Daniel H. Brush, April 19, 1839, to make up the balance of one thousand dollars, which he has advanced to A. M. Jenkins. [Here follows a list of notes.] For value received of D. H. Brush, I hereby trans-

fer and make over to him the within and annexed list of notes and accounts, amounting to $343·42. May 3, 1839.

(Signed) A. M. Jenkins."

It is proper to remark here, that this assigned list of notes and accounts contains some claims not included in the list which contains the claims handed over to defendant, Brush, for collection, but which the plaintiff had proved to have been collected by Brush, and which claims so proved amount to about $150. This of course reduces the defendant's liability to that amount; $250, then, was all the defendant had collected on Jenkins' account, of which Jenkins was entitled to one half, viz: $125. This amount is larger than is claimed by plaintiff's counsel, on this account, but in the calculation which I have made of defendant's liability, I have charged him with interest from the time of his respective collections up to the commencement of the action.

The defendant also proved a store account of about $40 against plaintiff, which, it is contended here, was not sufficiently proved, but which, as no objection appears to have been made below to the insufficiency of the proof, must be considered as established. He further proved, that many of the claims which he had undertaken to collect were worthless and could not be collected. One of defendant's witnesses also testified, that some time in the winter of 1843–4, he was shown a paper by the defendant containing a list of notes and accounts due plaintiff, some items of which were credited and marked as paid, and that defendant asked him to examine the items not credited, and to give him his opinion as to what he thought of their goodness, and that he (witness) then thought, and gave it as his opinion, from the best of his knowledge and information, that about $475 were then still collectable. Defendant also introduced one Marshall, who testified, that about a year ago he had had a conversation with plaintiff on this subject, and that plaintiff told him that defendant had paid him over between $400 and $500 on the demands which he had collected on the halves. That he is under the impression that plaintiff said he had paid over between $400 and $500, and that he does not distinctly recollect whether plaintiff said that it was on one or two ac-

counts. That he understood plaintiff to say defendant had remitted between $400 and $500 to plaintiff. That plaintiff showed him a copy of the list and demands, the same as the one in Court, at the same time that he said that defendant had so paid over, and that it was on the notes and accounts, which defendant was to collect on halves, he understood this payment was made. On his cross-examination, said witness stated, that he thought Jenkins told him that Brush had collected that much, and that he (Jenkins) would not have known how much defendant had collected, if he had not seen his books; and said witness also stated on said examination, that this might have been the admission respecting the payment of the $400 or $500 of which he had spoken before, and that it was his impression that Jenkins had told him defendant had paid over that much to him.

This is the evidence in substance, and it shows clearly that the plaintiff was not entitled to recover on his first special count. In order to prove it, the plaintiff had to show *first*, the receipts of claims by defendant, and promise to collect them; *second*, the neglect of collecting them; *third*, that by such neglect, plaintiff lost the benefit thereof. If he failed to show either of these facts, the count was not sustained. It is true, that on the second point, one of the defendant's own witnesses testified that some four years perhaps, after these claims had been placed in defendant's hands for collection, he had examined the items on the list containing a description of said claims, and thought that some $475·00 could be collected. But this does not suffice to charge the defendant with neglect. He may have differed in opinion from witness, or may have had satisfactory reasons for not making an effort to collect, at that time, or even previous to it, on the point that these items, to which the witness refers, in general, without specifying any, had since become worthless; the failure of proof is a total one. If these notes, &c. &c., were kept by defendant for an unreasonably long time without exertions to collect them, the plaintiff had a right to demand them back, and upon refusal, could have pursued the proper remedy against the defendant.

Leaving the plaintiff's claim under the first count out of view, it appears that independent of the proof of payment as testified to by Marshall, plaintiff had shown himself entitled to claim of defendant about $125·00, while defendant had proved about $80·00 against the plaintiff, leaving a small amount in favor of Jenkins. The jury having found $335·00 for defendant, it is manifest that they considered the payment to defendant as proved, to the amount of near $400·00, which, when placed to defendant's credit, nearly makes up the sum actually found, and the question now presents itself, were they justified in finding as they did?

I have set out the testimony of Marshall fully. He testifies to an admission of Jenkins. Without intending to impugn the veracity of the witness in the slightest degree, I am free to admit that I attach but very little weight to it. The admission was made a year before the trial. It related to a matter in which the witness was not concerned, and it is hardly necessary to say, how liable we are to misapprehend statements of others not involving our own interests. The evidence of admissions of parties, under circumstances as this was made, is considered by all legal writers and judges, who have had occasion to remark upon it, as the most frail and and dangerous. The two statements said to have been made by plaintiff in his conversation with the witness, are moreover little reconcilable, since he could have had no reason to complain of defendant's conduct towards him with regard to these claims, when, in the same breath, he admitted that he had received from $400·00 to $500.00 from him on these claims. But we are not trying the case as a jury, and are not at liberty to substitute our own views for theirs. The only question for us to determine is, was there evidence sufficient to justify the finding, and this question we must answer in the affirmative. The evidence was competent, and in itself sufficient to establish the fact of payment, and it stands uncontradicted. Besides many circumstances may have been disclosed on the trial in various ways, which, though they transpire, can rarely ever find their way into the record, as it is presented to an appellate Court, and which may have

added great weight to the testimony in question. It was the privilege of the jury to let these circumstances enter into their considerations. The Court below, who witnessed the trial and heard the living testimony, and had a much better opportunity to judge of the correctness of the verdict than we can possibly have with a barren record before us, has thought proper to refuse the motion for a new trial, and it would be too much for us to say that he erred, the testimony having been competent and sufficient to prove the fact, which the jury have actually found to exist.

The defendant, upon a motion for a new trial having been made, entered a *remittitur*, reducing his verdict to $79·25, which is near the amount of his account against plaintiff. From this, plaintiff's counsel wish the Court to draw the inference, that the defendant himself thought that Marshall's testimony should be disregarded. The entering of a *remittitur* by the successful party, though it has the appearance of being his voluntary act, is often, in fact, forced upon him. It is very probable also, that there were transactions between the parties, which did not come to light on the trial, which, nevertheless, made it an act of justice in defendant to remit, although the payment was actually made by him. The parties, it appears by the record, had been partners, and their business was evidently much mixed up. Jenkins, while these claims were in defendant's hands for collection, had managed them himself, more or less, and thereby rendered it very difficult for the defendant to account for all these many items, most of which were of small amount, though rising in the whole, upwards of $2000·00. The evidence shows throughout a confused mass of facts and transactions; some relevant, others irrelevant to the issues, both parties having evidently misapprehended their ground, as well of attack as of defence.

If injustice has been inflicted, we cannot discover it from the record, and must presume in favor of the verdict below, found by a jury of the neighborhood, and chosen by the parties themselves. Judgment below must be affirmed, with costs.

*Judgment affirmed.*